UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| IN RE KING PHARMACEUTICALS, | ) | NO. 2:03-CV-77 |
| INC. SECURITIES LITIGATION | ) | District Judge Phillips |
| | ) | Magistrate Judge Inman |

O R D E R

The lead plaintiffs have filed a "motion"[1] to compel the defendants to produce certain documents [Doc. 236]. The motion has been referred to the Magistrate Judge for disposition pursuant to 28 U.S.C. § 636 and the standing order of the Court. A hearing was held on September 20, 2005.

According to movants' motion, they ask that the defendants be compelled to produce "hundreds of critically important documents that King is withholding from the Class based on assertions of the attorney-client privilege, the attorney work product doctrine, and the 'settlement' and 'common interest' privileges." The documents at issue fall into three general categories:

(1) documents voluntarily disclosed by King Pharmaceuticals ["King"] to the Securities and Exchange Commission ["SEC"] and the Department of Justice ["DOJ"];

---

[1] Through inadvertence, there is no motion, as such; the movants filed a memorandum of law in support of a motion that does not exist. Accordingly, the memorandum itself will be treated as a motion.

(2) documents voluntarily disclosed by King to its outside independent auditor, Pricewaterhouse Coopers ["PWC"]; and

(3) documents voluntarily disclosed by King to Mylan Laboratories, Inc. ["Mylan"], in contemplation of a merger between King and Mylan that never came to fruition.

With respect to category No. (1), the defendants insist that any documents it furnished to the SEC or the DOJ are protected from discovery by a "settlement privilege." As to category No. (2), defendants contend that they are attorney work product and thus may not be discovered. And with respect to category No. (3), defendants maintain that the documents provided to Mylan are protected by both attorney-client privilege and attorney work product because King and Mylan share a "common legal interest in anticipated joint litigation."

### The documents provided to the SEC and DOJ

In 2003, the SEC commenced an investigation of King with reference to alleged underpayments owing Medicaid by King. The SEC issued a subpoena to King for various documents, and King produced those documents. A few months later, King's attorneys initiated settlement negotiations with the SEC and DOJ. King's attorneys created a number of documents it forwarded to the SEC or DOJ to further those settlement negotiations. It is these documents that the plaintiffs seek to obtain.

2

Defendants argue that these documents are protected by a "settlement privilege" and rely upon *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003). Plaintiffs, however, insist that to the extent a settlement privilege is recognized by the Sixth Circuit, it does not apply to the documents at issue, relying upon *In Re. Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289 (6th Cir. 2002).

In *Goodyear*, the plaintiffs sought to discover, in contravention of a confidentiality order, any statements made by representatives of Goodyear Tire & Rubber Company in the course of settlement talks regarding a prior suit. 332 F.3d at 979. After the District Judge declined to vacate or modify its order, the plaintiffs appealed. *Id.* The Sixth Circuit succinctly stated the issue before it as follows: "The issue presented on appeal is whether *statements* made in furtherance of settlement are privileged and protected from third-party discovery." 332 F.3d at 977 (italics supplied).

The *Goodyear* court held:

> There exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations. . . . In order for settlement talks to be effective, parties must feel uninhibited in their communications.

*Id.*, at 980.

> The settlement privilege is also necessary because permitting third-party discovery of negotiation communications would lead to other undesirable results. In general, and in this case, there is no transcript of the settlement talks.

*Id.,* at 982.

3

> In sum, any communications made in furtherance of settlement are privileged.

*Id.,* at 983.

In *Columbia/Healthcare*, the Sixth Circuit recited that "[t]his action is an interlocutory appeal from an order of the district court compelling Columbia/HCA Healthcare Corporation (Columbia/HCA) to produce certain otherwise privileged *documents*." [Italics supplied.] 293 F.3d at 291.

In *Columbia/HCA*, the defendant (Columbia/HCA) had been the subject of a Department of Justice investigation regarding possible Medicare and Medicaid fraud. At some point in that investigation, Columbia/HCA determined that it was in its best interest to engage in settlement negotiations with the government, and to that end it produced Coding Audits and related documents to the government. In subsequent civil litigation with other parties, Columbia/HCA refused to provide those same documents to the plaintiffs on the basis that the documents were protected by the attorney work product doctrine and attorney-client privilege. The Sixth Circuit held that the voluntary disclosure of these documents to the government constituted a waiver of both the attorney-client privilege and any protection afforded by the attorney work product doctrine.

*Columbia/HCA* is squarely on point with the issue now before this Court: Columbia/HCA furnished documents to the government in an effort to settle threatened

4

criminal prosecution, as did King Pharmaceutical in the instant case; in subsequent civil litigation with third parties, Columbia/HCA refused to furnish those same documents during discovery, claiming that they were protected from disclosure by attorney-client privilege or the attorney work product doctrine, as does King Pharmaceutical herein.

To interpret *Goodyear* as defendants argue would completely eviscerate *Columbia/HCA* inasmuch as the respective rulings of those cases would be irreconcilably antagonistic. Throughout *Goodyear*, the Court uses repeatedly the words "communications" or "statements." Moreover, *Goodyear* clearly involved verbal communications made in the course of settlement negotiations, and not documents *per se*. To find that tangible documents are included within "communications" or "statements," as King argues, would, as aforesaid, render *Columbia/HCA* meaningless.

*Columbia/HCA* controls; the documents furnished by King to the SEC and DOJ are *not* protected by the attorney work product doctrine or the attorney-client privilege by virtue of their voluntary disclosure to those agencies. The motion to compel is GRANTED.

**The documents furnished to Pricewaterhouse Coopers**

The King defendants maintain that the documents furnished to its independent outside auditor, Pricewaterhouse Coopers, are protected by the attorney work product doctrine.

5

The protection afforded by the attorney work product doctrine protection is waived only when the documents are disclosed to an "adversary." *Columbia/HCA*, 293 F.3d at 306 n. 28. Thus, the issue herein may be stated as follows: Is an independent auditor an "adversary" in the sense of the foregoing rule?

King cites a number of cases from other jurisdictions that hold that an independent auditor is not an adversary and thus disclosure to an independent auditor does not constitute a waiver of any privilege. *See, e.g., Gutter v. E.I. De Nemours & Co.*, 1998 WL 2017926 at *5 (S.D. Fla. 1998); *In Re. Pfizer, Inc. v. Sec. Litig.*, 1993 WL 561125 at *6 (S.D. N.Y. 1993); *Gramm v. Horsehead Indus., Inc.*, 1990 WL 142404 at *5 (S.D. N.Y. 1990); and *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 2004 WL 2389822 (S.D. N.Y. 2004).

Plaintiffs, on the other hand, cite a number of cases from other jurisdictions that hold that disclosure to outside auditors *does* waive both attorney-client privilege and the protection of the attorney work product doctrine. *Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113 (S.D. N.Y. 2002); *Diasonics Sec. Litig.*, 1986 WL 53402 at *1 (N.D. Cal. 1986); and *Eglin Fed. Credit Union v. Cantor, Fitzgerald Sec. Corp.*, 91 F.R.D. 404 (N.D. Ga. 1981).

Notably, there are no cases from the Sixth Circuit.

Pricewaterhouse Coopers was King's usual outside auditor. It performed no service for King other than what it customarily performed for King, and the documents

6

furnished to PWC by King were those normally furnished by King to its outside auditor; they were not furnished "in anticipation of litigation" as contemplated by Fed.R.Civ.P. 26(b)(3). To be sure, these documents very well may now be at the heart of this litigation, but they would have been furnished to PWC *in any event.* As a publicly-held corporation, King was obliged to furnish to its independent auditor all information that would enable PWC to render truthful and accurate earnings and financial statements. As such, the question of whether PWC was an "adversary" or not is beside the point; King furnished documents to PWC ostensibly to enable PWC to prepare accurate audit reports and financial statements which in turn would have been publicly disseminated. Thus, the attorney work product doctrine has no application and the motion to compel is GRANTED.

## The common interest privilege

There are no cases from the Sixth Circuit regarding this "privilege."

Rather obviously, to the extent any of the documents furnished to Mylan are the same as those documents furnished to the SEC, DOJ, or PWC, there can be no common interest privilege simply because any documents furnished to the SEC, DOJ or PWC are not protected by either attorney-client privilege or the work product doctrine.

To the extent that there are some documents furnished to Mylan that were not also furnished to the SEC, DOJ, or PWC, it is noted that King allowed Mylan to retain

7

those documents notwithstanding that the contemplated merger between Mylan and King did not occur. Allowing Mylan, which by then was unconnected to King in any fashion, to keep the documents vitiates any privilege that otherwise might protect those documents from disclosure.

The motion to compel production of these documents is GRANTED.

SO ORDERED:

s/ Dennis H. Inman<br>
United States Magistrate Judge