UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| IN RE KING PHARMACEUTICALS, INC. SECURITIES LITIGATION | Lead Case No. 2:03-CV-77<br><br>CLASS ACTION<br><br>Judge Thomas W. Phillips<br>Magistrate Judge Dennis H. Inman<br><br>**ECF FILED** |

# UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND SUPPORTING MEMORANDUM OF LAW

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

    I.    HISTORY OF THE LITIGATION AND SETTLEMENT .................................... 3

    II.    THE PRELIMINARY APPROVAL EVALUATION .......................................... 6

        A.    The Standards For Preliminary Approval ...................................................... 6

        B.    The Proposed Settlement Should Be Preliminarily Approved .................... 7

            1.    The Likelihood of Ultimate Success on the Merits Balanced Against the Amount and Form of Relief Offered in the Settlements ................................................................ 8

            2.    The Risks, Expense, and Likely Duration of the Litigation Favors Settlement ...................................................... 12

            3.    The Stage of the Proceedings and the Amount of Discovery Completed Favors Settlement ...................................... 13

            4.    The Settlements Were the Result of "Arms'-Length" Negotiations Among Competent and Experienced Counsel With the Assistance of an Experienced Mediator ........... 14

            5.    The Lack of Any Objections Raised by Class Members ............... 15

            6.    The Public Interest Favors Settlement .......................................... 15

CONCLUSION ........................................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990)......................................................................................12

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ....................................................................................6

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)..................................................................................................10

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*,
    137 F.R.D. 240 (S.D. Ohio 1991)................................................................................6

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001).......................................................................10

*In re Apple Computer Sec. Litig.*,
    No. C-84-20148 (A) - JW, 1991 U.S.Dist. LEXIS 15608
    (N.D. Cal. Sept. 6, 1991) ..........................................................................................12

*In re Comshare, Inc. Sec. Litig.*,
    183 F.3d 542 (6th Cir. 1999) ......................................................................................9

*In re Dun & Bradstreet Credit Services Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990)...............................................................................8

*In re IPO Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) ................................................................................7

*In re Ikon Office Solutions, Inc.*,
    194 F.R.D. 166 (E.D. Pa. 2000)..................................................................................8

*In re Prudential Insurance Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998).....................................................................................13

*In re Prudential Insurance Co. of Am. Sales Practices Litig.*,
    177 F.R.D. 216 (D.N.J. 1997).....................................................................................7

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ..............................................................................14

*In re Telectronics Pacing Sys., Inc.*
    137 F. Supp. 2d 985 (S.D. Ohio 2001) .......................................................................6

*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ........................................................................14

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
    234 F.R.D. 627 (W.D. Ky. 2006)..................................................................................8

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ...................................................................................12

## DOCKETED CASES

*In re Independent Energy Holdings PLC Sec. Litig.*,
    No. 00 Civ. 6689 (SAS), 2003 WL 22244676
    (S.D.N.Y. Sept. 29, 2003)............................................................................................14

*Int'l Union v. Ford Motor Co.*,
    Nos. 05-747730, 06-10331, 2006 WL 1984363
    (E.D. Mich. July 13, 2006) ...........................................................................................8

## FEDERAL RULES

Fed. R. Civ. P. 23(e)(1)(A) ..................................................................................................6

Fed. R. Civ. P. 23(e)(1)(B) ..................................................................................................2

Fed R. Civ. P. 23(e)(1)(B) ..................................................................................................6

Fed. R. Civ. P. 23(e)(1)(C) ..................................................................................................2

Fed. R. Civ. P. 23(e)(1)(C) ..................................................................................................7

Lead Plaintiffs the Policemen and Firemen Retirement System of the City of Detroit ("Detroit P&F"), the Los Angeles County Employees Retirement Association ("LACERA"), the Teachers' Retirement System of Louisiana ("TRSL") and Kathleen Crews (collectively the "Lead Plaintiffs"), hereby apply for an Order: (1) preliminarily approving the settlement between Lead Plaintiffs and Defendants King Pharmaceuticals, Inc. ("King"), the Individual Defendants and the Underwriter Defendants,[1] in accordance with the Stipulation of Settlement dated July 31, 2006 and attached hereto as Exhibit 1 (the "Settlement"); (2) approving a notice to the Class of the proposed Settlement (Exhibit B to the Stipulation of Settlement); and (3) scheduling a Final Approval Hearing for a date no later than early December 2006.[2] Lead Plaintiffs are informed that Defendants do not oppose this motion.

## INTRODUCTION

Lead Plaintiffs have reached an agreement to settle this class action litigation for a payment of $38,250,000.00 in cash. The proposed Settlement was achieved after more than three years of litigation and only after counsel for Lead Plaintiffs reviewed hundreds of thousands of documents and took 25 depositions of individuals with knowledge about the case. The proposed Settlement is the product of extensive negotiations that were overseen by an experienced mediator who has facilitated the resolution of dozens of securities class action litigations. Representatives from Lead Plaintiffs Detroit P&F, LACERA and TRSL – sophisticated public pension funds that collectively manage over $40 billion in retirement assets

---

[1] The Individual Defendants are Jefferson J. Gregory, John M. Gregory, Joseph R. Gregory, James E. Gregory, Brian G. Schrader, James R. Lattanzi, Kyle P. Macione, Rufus Henry Richards, Ernest C. Bourne, Frank W. DeFriece, Jr., D. Greg Rooker, Earnest W. Deavenport, Jr., Gregory D. Jordan, R. Charles Moyer, Richard C. Williams, and Dennis M. Jones. The Underwriter Defendants are Credit Suisse First Boston Corporation, J.P. Morgan Securities, Inc.. Banc of America Securities, Inc., and UBS Warburg. King, the Individual Defendants and the Underwriter Defendants are referred to collectively herein as "Defendants."

[2] For the Court's convenience, the [Proposed] Order Preliminarily Approving the Settlement and Providing for Notice ("Proposed Order"), which is included as Exhibit A to the Stipulation of Settlement attached as Exhibit 1 to this motion, sets forth the relief requested in this motion.

for the benefit of public employees throughout the country – were directly involved in the negotiations and fully support the Settlement.

The proposed Settlement requires that King or its insurance carriers transfer the $38.25 million settlement payment into an escrow account maintained by a Tennessee branch of U.S. Bank within 30 days after preliminary approval of the Settlement. At that time, the settlement payment will begin to earn interest for the benefit of the Class. In return, the Class will release all claims against the Defendants and certain related persons and entities.

As discussed in Point II.A below, preliminary approval is simply the first step in the settlement approval process. Federal Rule of Civil Procedure 23 contemplates that, in granting preliminary approval, the Court should also "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." Fed. R. Civ. P. 23(e)(1)(B); *see also* the Proposed Notice attached as Exhibit B to the Stipulation of Settlement. Finally, Rule 23 also provides that the Court should schedule a Final Approval Hearing at which class members have the opportunity to object to any aspect of the settlement. Fed. R. Civ. P. 23(e)(1)(C). In order to permit Class members adequate time to receive the notice, evaluate the settlement, and lodge any objections they may have, Lead Plaintiffs respectfully request that, should the Court grant preliminary approval of the Settlement, the Court schedule a Final Approval Hearing for a date in early December 2006.

The preliminary approval sought by this motion merely requires that the Court make an initial fairness evaluation to ensure that the Settlement is "within the range of possible approval." *Manual for Complex Litigation* § 30.41 (3d Ed. 1995). The burden during this initial stage is low and the purpose of preliminary approval is to identify whether the settlement is so facially invalid that it would make "notice to the class, with its attendant expenses, and a hearing ... futile gestures." 4, *Herbert Newberg & Alba Conte, Newberg on Class Actions* § 11:25 (4th Ed. 2002).

Lead Plaintiffs believe that the proposed Settlement not only falls well within "the range of possible approval," but easily satisfies the criteria for final approval. Accordingly, preliminary approval should be granted.

In accordance with Federal Rule of Civil Procedure, and as set forth in more detail in the Proposed Order attached as Exhibit A to the Stipulation of Settlement, Lead Plaintiffs also seek by this motion the following proposed timetable for finalizing the Settlement:

- ***Notice Date*:** No later than the fourteenth day after entry of the order preliminarily approving the settlement , Lead Plaintiffs' counsel shall cause a copy of the Notice and the Proof of Claim forms (Exhibits B and D to the Stipulation) to be mailed to all Class Members who can be identified with reasonable effort.

- ***Publication Notice.*** No later than seven days after the Notice Date, Lead Plaintiffs' counsel shall cause the Summary Notice (Exhibit C to the Stipulation) to be published in the national edition of *The Wall Street Journal*.

- ***Final Approval Papers Due.*** The deadline for Lead Plaintiffs to file papers in support of final approval of the Settlement, the plan of allocation, and request for attorneys' fees and reimbursement of expenses shall be twenty-one days prior to the date set for the Final Approval Hearing.

- ***Objection Deadline.*** The deadline for Class members to file objections to the Settlement, the plan of allocation, and request for attorneys' fees and reimbursement of expenses shall be fourteen days prior to the date set for the Final Approval Hearing.

- ***Final Approval Hearing.*** Lead Plaintiffs respectfully propose that, to allow sufficient time for the Notice Period, the Court set a date for a Final Approval Hearing no later than early December 2006.

- ***Claim Form Deadline.*** The deadline for Class Members to file Proof of Claim and Release forms shall be 120 days after the Notice Date.

## I. HISTORY OF THE LITIGATION AND SETTLEMENT

On March 11, 2003, prior to the market opening, King announced that it had received a letter from the Securities Exchange Commission ("SEC") stating that King was the subject of an

SEC investigation, and accompanied by a subpoena requesting the production of certain documents. Following that announcement, the price of King's publicly-traded common stock fell from approximately $15.90 per share on March 10, 2003 to approximately $12.17 at the close of trading on March 11, 2003. In the ensuing weeks, multiple lawsuits were filed on behalf of persons who purchased common stock of King from February 16, 1999, to March 10, 2003 (the "Class Period"), including persons who acquired King stock by virtue of the merger of Jones Pharmaceuticals, Inc. with King in August 2000 (the "Jones Merger"). By Order dated April 23, 2003, those actions were consolidated as *In re King Pharmaceuticals, Inc. Securities Litigation*, Civil No. 2:03-CV-77.

On August 15, 2003, the Court appointed LACERA, Detroit P&F, and TRSL as Lead Plaintiffs, and approved Bernstein, Litowitz, Berger & Grossmann LLP ("Lead Counsel") as lead counsel for the proposed Class. The Court also appointed Kathleen Crews and Jim O'Neil as Lead Plaintiffs for a proposed Jones Subclass, and approved the law firms of Weiss & Lurie and Abbey Spanier Rodd Abrams & Paradis, LLP (formerly Abbey Gardy LLP) (collectively, "Jones Subclass Lead Counsel") as lead counsel for the proposed Jones Subclass. (Mr. O'Neil subsequently withdrew, leaving Ms. Crews as the sole lead plaintiff of the Jones Subclass).

On October 21, 2003, Plaintiffs filed a Consolidated Class Action Complaint (the "Complaint") alleging violations of Section 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"); Section 10(b), 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). The Defendants named in the Complaint include King, certain of its current and former officers and directors, and certain underwriters of King stock.

Defendants filed motions to dismiss the Complaint on January 7, 2004. On August 12, 2004, the Court granted the motions to dismiss in certain respects and denied in other respects. On November 19, 2004, Lead Plaintiffs filed a motion requesting that the Court certify a class

and subclass. The Defendants conducted class discovery, after which they stipulated to class certification of the larger Class, but contested certification of the Jones Merger Subclass. After oral argument and a hearing before Magistrate Judge Inman, the Court approved (1) the certification of a Class comprised of all persons (with certain exclusions) who purchased common stock of King during the time period from February 16, 1999, to March 10, 2003; (2) the appointment of Detroit P&F and LACERA as representatives for that Class, and the appointment of Lead Counsel as lead counsel for that Class; (3) the certification of a Jones Subclass comprised of all persons (with certain exceptions) who acquired King stock through the Jones Merger; and (4) the appointment of Ms. Crews as the representative for the Jones Subclass, and the appointment of Jones Subclass Lead Counsel for the Subclass.

From the inception of the litigation, Lead Counsel and Jones Subclass Lead Counsel have diligently prosecuted this case, including (i) investigating the facts and drafting the detailed Amended Complaint; (ii) briefing motions to dismiss (including briefing to District Judge Hull in connection with Defendants' objections to Magistrate Judge Inman's initial ruling); (iii) engaging in extensive discovery, including document discovery and taking twenty-five depositions; (iv) interviewing additional witnesses who had knowledge of the issues in the case; (v) evaluating complex issues relating to the Medicaid Rebate regulation programs at issue, as well as other Federal and State regulations relating to payment of rebates on pharmaceutical products; (vi) consulting with damages, accounting and industry experts; and (vii) challenging Defendants' assertion of a "settlement privilege" and other privileges (including making a motion to compel and opposing Defendants' motion for reconsideration and objections to Magistrate Judge Inman's opinion granting Lead Plaintiffs' motion to compel).

The proposed Settlement was achieved after protracted arms'-length negotiations, which included two separate in-person mediations conducted under the auspices of a highly respected

mediator. Specifically, in the fall of 2005, the parties agreed to non-binding, formal mediation of this dispute with the assistance of mediator Gary V. McGowan. In-person mediation sessions were held with Mr. McGowan on November 17 and 18, 2005, in New York, and again on February 7, 2006, in Washington, D.C. Representatives from Detroit P&F and LACERA personally attended and participated in these mediation sessions, while representatives for TRSL and Kathleen Crews were kept apprised of the mediation by their respective counsel. Extensive communications among the parties, King's insurers and Mr. McGowan also took place before and after these mediation sessions. The parties also appeared before the Court as part of the settlement process. As a result of the efforts of the parties, the mediator and the Court, the parties reached the proposed Settlement.

## II. THE PRELIMINARY APPROVAL EVALUATION

### A. The Standards For Preliminary Approval

"Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *In re Telectronics Pacing Sys.,* 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001); *see also Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977) ("[I]n class action suits, there is an overriding public interest in favor of settlement"); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 246 (S.D. Ohio 1991) ("The law generally favors and encourages the settlement of class actions.").

Approval of a class action settlement entails a three-step process outlined in Rule 23(e) of the Federal Rules of Civil Procedure. The Court first makes a preliminary determination of whether the settlement appears to fall within the range of possible approval. *See* Fed. R. Civ. P. 23(e)(1)(A); *Manual for Complex Litigation* § 30.41 (3d Ed. 1995). If the settlement meets the minimal requirements for preliminary approval, the Court should "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." Fed R. Civ. P.

23(e)(1)(B). After the Class is notified of the preliminary settlement, the final step in the approval process requires the Court to hold a formal fairness hearing, where class members have the opportunity to object to any aspect of the settlement. Fed. R. Civ. P. 23(e)(1)(C).

The standard for granting preliminary approval is not a difficult one. As the Manual for Complex Litigation explains, if the proposed settlement "*appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing,* at which arguments and evidence may be presented in support of and in opposition to the settlement." *Manual for Complex Litigation* § 30.41, at 237 (3d Ed. 1995) (emphasis added); *see also In re IPO Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005) ("[w]here the proposed settlement appears to be the product of serious, informed, noncollusive negotiations . . . and falls within the range of possible approval, preliminary approval is granted.").

### B. The Proposed Settlement Should Be Preliminarily Approved

At the final settlement approval hearing, the Court will have before it a more extensive record (including additional motion papers and affidavits from Lead Plaintiffs and their counsel) and will be in a position to make an ultimate determination as to whether the Settlement is fair and adequate under all of the circumstances surrounding the litigation. At this juncture, however, Lead Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice of the Settlement may be sent to the Class and a final approval hearing scheduled.[3]

The proposed Settlement here plainly satisfies the standards for preliminary approval, as evidenced by reference to the factors considered by courts in the Sixth Circuit in granting final

---

[3] The notice and notice procedures set forth in the Proposed Order plainly satisfy Rule 23's notice requirements. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 177 F.R.D. at 216, 231 (D.N.J. 1997) (a settlement notice "need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.")

7

approval. These factors – which only apply to the more stringent determination appropriate for *final* approval – are: (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the nature of the negotiations; (5) the objections raised by the class members; and (6) the public interest. *See Int'l Union v. Ford Motor Co.,* Nos. 05-747730, 06-10331, 2006 WL 1984363, *22 (E.D. Mich. July 13, 2006); *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.,* 234 F.R.D. 627, 631 (W.D. Ky. 2006); *In re Dun & Bradstreet Credit Services Customer Litig.,* 130 F.R.D. 366, 371 (S.D. Ohio 1990). As set forth below, the proposed Settlement satisfies these standards.

    1)    The Likelihood of Ultimate Success on the
Merits Balanced Against the Amount and
<u>Form of Relief Offered in the Settlements</u>

As in every complex case of this kind, Lead Plaintiffs faced formidable obstacles to recovery. While Lead Plaintiffs believe that they could prove the claims asserted (and negotiated the proposed settlement on that basis), there was no guarantee that they would prevail at trial and ultimately collect, after post-trial motions and appeals, a judgment larger than the $38.25 million obtained for the Class through the Settlement. Indeed, post-PSLRA rulings make it clear that the risk of no recovery has increased substantially since the PSLRA was adopted in 1995.[4]

Securities litigation generally involves complex issues of fact and law, and this case is no exception. To establish liability under Section 10(b), Lead Plaintiffs would bear the burden of

---

[4] *See In re Ikon Office Solutions, Inc.,* 194 F.R.D. 166, 194 (E.D. Pa. 2000) (acknowledging that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"). The court in *Ikon* went on to describe a number of additional factors that have made litigation of securities class actions more difficult, stating "The Act . . . substantially alters the legal standards applied to securities fraud claims in ways that generally benefit defendants rather than plaintiffs." *Id.* at 194-95; *see also* Elliot J. Weiss & Janet Moser, *Enter Yossarian: How to Resolve the Procedural Catch-22 that the Private Securities Litigation Reform Act Creates,* 76 Wash. U.L.Q. 457, 459 (1998) (noting that the PSLRA made it more difficult to set forth a claim and survive a motion to dismiss).

proving, *inter alia,* that Defendants participated in the dissemination of false or misleading information, that the information was *material* to investors in determining whether to invest in King common stock, that the information inflated the market price of those securities, *caused damage* to the Class, and that Defendants acted with *scienter*. *In re Comshare, Inc. Sec. Litig.,* 183 F.3d 542, 548 (6th Cir. 1999). Establishing the elements of materiality, loss causation, and scienter posed substantial hurdles to recovery.

*First,* Defendants have consistently defended this litigation on the grounds that the overstatements of King's financial statements stemming from the Company's failure to pay Medicaid rebates were not material as a matter of law. Defendants argued that the overstatements that form the basis of this case were less than 1% of King's total revenues for the Class Period. While Lead Plaintiffs were successful in overcoming Defendants' challenges to materiality at the motion to dismiss stage of this litigation, there was certainly a risk that these arguments would prevail on summary judgment. Indeed, the Court noted that "[i]t may well be that the Court will eventually find that . . . the misstatements made during certain financial reporting periods were immaterial as a matter of law," but this is "the kind of factual analysis normally given to motions for summary judgments rather than to Rule 12(b)(6) motions."

*Second*, Defendants maintained throughout this litigation that there was no loss causation, arguing that King's March 11, 2003 announcement and the concomitant drop in its stock price merely reflected *uncertainty* over the extent of the overstatements in King's financial results. In Defendants' view, King's March 11, 2003 announcement did not reverse the alleged inflation in King's stock price during the Class Period because, in their view, there was no stock price inflation. In support of this position, Defendants argued that (1) King's stock price increased in the days following the announcement, demonstrating that the March 11, 2003 drop in the stock price was *not* a recoverable measure of damages under the federal securities laws; and (2) a more

9

accurate assessment of "damages" is the price when King announced its restatement on July 29, 2003, when the stock traded $2.60 *higher* than its price on March 11, 2003.

In advancing this argument, Defendants would have relied on the Supreme Court's decision in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005), which was decided while the parties were in the midst of conducting fact discovery in this litigation. In *Dura*, the Supreme Court held that a plaintiff in a securities class action must plead and prove "loss causation" by identifying a "causal link" between the alleged corrective disclosure (in this case, the March 11, 2003 announcement) and the damages, or loss, suffered by the Class. *Id.* at 347. Defendants would have advanced a broad interpretation of *Dura* to argue that Lead Plaintiffs could not demonstrate the necessary "causal connection" between the March 11, 2003 announcement and the losses suffered by the Class. While Lead Plaintiffs believe that they could satisfy the requirements for proving "loss causation," they recognize that the Supreme Court's decision in *Dura* did alter the litigation landscape. Accordingly, there was some risk that on summary judgment or motions *in limine*, this Court could have concluded that the damages to the Class were far smaller than Lead Plaintiffs' damage experts would contend. Indeed, Defendants and their damage experts likely would have argued that, under *Dura*, the Class suffered *no recoverable damages at all*. Even if the Court allowed this issue to be heard by the jury, it is extremely difficult to forecast which expert's testimony or methodology the jury would have accepted. *See In re Am. Bank Note Holographics, Inc. Sec. Litig.,* 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Class Defendants, who could minimize or eliminate the amount of Plaintiffs' losses.").

*Third,* Lead Plaintiffs would have had to prove that each Defendant acted with scienter in knowingly misrepresenting King's reported financial results to the public. Throughout this

10

litigation, Defendants contended they attempted in good faith to comply with the complex set of governmental regulations relating to Medicaid rebate payments and that their compliance failures were the result of innocent errors committed by low-level employees and difficulties with certain computer systems that senior level management attempted to remedy. Defendants no doubt intended to present evidence at summary judgment and/or to the jury that King's senior level managers were undertaking steps to ensure that King was correctly reporting its Medicaid information to the Government, including hiring key personnel, asking for advice of outside consultants, and engaging in several upgrades of its computer systems.[5]

Lead Plaintiffs faced similar issues with respect to their Section 11 claims. While Section 11 does not require a plaintiff to establish scienter, Defendants argued that Lead Plaintiffs would have faced the same issues with respect to proving materiality and loss causation as they faced with their Section 10(b) claims. As discussed above, Defendants have consistently contended that the misstatements alleged in the Complaint were not material as a matter of law. If Defendants prevailed on this argument, then Lead Plaintiffs' Section 11 claims would fail along with their Section 10(b) claims. Similarly, Section 11 provides for a reduction of damages if a defendant can establish that any portion of the claimed damages were caused by factors other than the disclosure of the alleged misstatements. This is simply the flip side of the "loss causation" argument discussed above. Thus, although Defendants – and not Lead Plaintiffs – would have born the burden of establishing for Section 11 purposes that the Class's losses were caused by factors other than the March 11, 2003 announcement, for all practical purposes it is the exact same "loss causation" issue relevant to Lead Plaintiffs' Section 10(b) claims. Therefore, if Defendants prevailed on their loss causation argument under *Dura,* as discussed above, then they

---

[5] Moreover, the fact that the SEC investigation has concluded against King without resulting in any formal charges, fines or any repercussions whatsoever to any of the Defendants illustrates the significant issues Lead Plaintiffs faced in proving scienter.

likely would have been able to demonstrate that the Class did not suffer any damages for purposes of Section 11.

In short, while Lead Plaintiffs believe that the claims asserted have substantial merit, if the litigation continued, the Lead Plaintiffs and the Class would bear the risks of establishing liability through multiple experts' testimony and other evidence that would have been challenged by the expert testimony and other evidence introduced by the Defendants. This contest could have devolved into a credibility toss-up to be decided by the jury.[6] By contrast, the amount of the proposed Settlement is large by any measure, and eliminates all of these risks.

> 2) The Risks, Expense, and Likely Duration of
> the Litigation Favors Settlement

There is no doubt that this securities class action involved complex factual and legal issues. Indeed, the primary issues in this case related to King's failure to comply with an admittedly complex regulatory framework that requires pharmaceutical manufacturers to pay rebates to various federal and state governmental agencies. Calculation of Medicaid rebates involves a series of complicated formulas that include a number of inclusions and exclusions, modifications based on "class of trade" (*i.e.,* to whom the drugs were sold), type of drug, adjustments for subsequent price changes, and a number of other factors that in some instances are not explicitly addressed in the regulatory guidelines. Lead Plaintiffs hired industry experts who spent substantial time assisting Lead Counsel in understanding the regulatory scheme. If the litigation had continued, these industry experts would have been even more involved in the

---

[6] Even if Lead Plaintiff were to prevail at trial, risks to the Class would remain. For example, in *In re Apple Computer Sec. Litig.,* No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991), the jury returned a verdict for plaintiffs after trial. However, the court entered judgment notwithstanding the verdict for the individual defendants and ordered a new trial with respect to the corporate defendant. In another case, the class won a jury verdict and a motion for judgment notwithstanding the verdict was denied, the judgment was reversed and the case dismissed. *Backman v. Polaroid Corp.,* 910 F.2d 10 (1st Cir. 1990); *see also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing plaintiff's jury verdict of $81 million for securities fraud).

continued discovery of Defendants, and would have prepared formal expert reports and testified to the jury. This, in turn, would have greatly increased the expense of further litigation.

If not for the proposed Settlement, the case would have continued to be fiercely contested by all parties. Defendants are represented by well-respected and highly-capable counsel. The parties would have had to complete an extensive and time-consuming discovery program and complete expert discovery. Inevitably, Defendants would have filed motions for summary judgment. Assuming Lead Plaintiffs' claims survived Defendants' motions, any trial would run at least several weeks, and involve numerous witnesses, experts and the introduction of voluminous documentary evidence. Taking into account the likelihood of appeal, absent the proposed Settlement, this case likely would have continued for years.

By contrast, the proposed Settlement secures a substantial benefit for the Class in this highly complex and contested action, undiminished by further expenses, and without the delay, risk, and uncertainty of continued litigation. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 318 (3d Cir. 1998) (settlement was favored where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court.").

### 3) The Stage of the Proceedings and the Amount of Discovery Completed Favors Settlement

In this case, Lead Plaintiffs have sufficient knowledge to evaluate the strengths and weaknesses of the Class's claims and the propriety of the proposed Settlement. As will be set forth more fully in advance of the Final Approval Hearing, Lead Counsel and Jones Subclass Lead Counsel conducted an exceptionally thorough investigation of the factual allegations. This investigation included an extensive review and analysis of available documents, interviews with and depositions of numerous witnesses with knowledge of the claims alleged, as well as consultation with numerous experts. In addition, the Settlement was only reached after motions

to dismiss were denied, the Class was certified, discovery was well underway and several mediation sessions were conducted. Thus, Lead Plaintiffs and their counsel were in position to conclude that the Settlement is fair and adequate, and is in the best interest of the Class.

> 4) The Settlements Were the Result of "Arm's-Length" Negotiations Among Competent and Experienced <u>Counsel With the Assistance of an Experienced Mediator</u>

In appraising the fairness of the proposed settlement, the court is entitled to rely heavily on the opinion of competent counsel. *In re Telectronics Pacing Sys.*, *Inc.*, 137 F. Supp. 2d 985, 1015-16 (S.D. Ohio 2001). In this case, the proposed Settlement is the product of intensive, arm's-length negotiations between counsel – with the active participation of representatives from some of this country's largest public pension funds – that extended over many months and involved several substantive mediation sessions and numerous follow-up communications with a highly respected mediator, Gary M. McGowan. *See In re Independent Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (With Mr. McGowan acting as mediator, "Finally, the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable."). As a result of the negotiation process, Lead Counsel and Jones Subclass Lead Counsel – who are highly experienced in securities class action litigation – have made a considered judgment that the proposed Settlement is fair and reasonable, and provides a substantial benefit to the Class. This fact supports the Court's preliminary approval of the proposed Settlement. *See In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280-81 (S.D.N.Y. 1999) ("[A] presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (internal quotation marks and citation omitted).

14
Case 2:03-cv-00077 Document 277 Filed 08/28/06 Page 18 of 20

### 5) The Lack of Any Objections Raised by Class Members

This factor does not apply at this stage because Class members will not have the opportunity to object to the settlement until the Court issues a Preliminary Approval order and sets a Final Approval Hearing.[7]

### 6) The Public Interest Favors Settlement

As discussed above, the Settlement of $38,250,000 plus interest provides a substantial recovery to a large class of shareholders. The Settlement puts an end to protracted litigation that, absent settlement, likely would have continued for many more years in this Court or in the Court of Appeals despite the best efforts of the parties and the Court to speed up the process. Thus, the public interest favors settlement.

---

[7] Of course, "[t]he fact that some class members object to the Settlement does not by itself prevent the court from approving the agreement." *Id.* Moreover, "a relatively small number of class members who object is an indication of a settlement's fairness." *Id.* (citing 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* §11.48 (3d ed. 1992)).

## CONCLUSION

Because the foregoing demonstrates at a minimum that the proposed Settlement falls within the range of possible approval, Lead Plaintiffs respectfully request that the Court issue an Order substantially in the form attached as Exhibit A to the Stipulation of Settlement filed herewith as Exhibit 1: (i) preliminarily approving the Settlement; (ii) directing that Notice be given in the form and manner set forth in Exhibit B to the Stipulation of Settlement; (iii) scheduling a Final Approval Hearing in early December 2006.

Dated: August 28, 2006

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

By: __/s/ Robert S. Gans
    Robert S. Gans
    Jeffrey N. Leibell
    John C. Browne
    1285 Avenue of the Americas
    New York, New York 10019
    Tel: (212) 554-1400
    Fax: (212) 554-1444

*Lead Counsel for Lead Plaintiffs and the Class*

**WEISS & LURIE**
Joseph H. Weiss
Mark D. Smilow
Ilya Nuzov
551 Fifth Avenue
New York, NY 10176
(212) 682-3025

**CHERNAU, CHAFFIN & BURNSED PLLC**
Stanley M. Chernau
Linda F. Burnsed
One American Center
3100 West End Avenue, Suite 550
Nashville, TN 37203
(615) 244-5480

*Liaison Counsel for Lead Plaintiffs and the Class*

**ABBEY SPANIER RODD ABRAMS & PARADIS, LLP**
Arthur N. Abbey
Meagan Zapotocky
212 East 39th Street
New York, NY 10016
(212) 889-3700

*Attorneys for the Jones Merger Lead Plaintiff and Lead Counsel for the Jones Merger Subclass*